## Commonwealth ex rel. McKirdy et al., Appellants, v. Macferron, Treasurer of Allegheny Co.

[Marked to be reported.]

*Classification of cities—Transition from one class to another—Effect thereof upon local laws—Act of May 23, 1874.*

The transition of a city from one class to another marks such change in its government as the law makes necessary to adjust it to the class into which it goes. In other respects it works no change, but the city brings its municipal belongings with it into the new class: Com. v. Wyman, 137 Pa. 508, approved.

*Collection of taxes in cities of second class—Act of March 22, 1877—Repeal of local law thereby.*

The city of Allegheny, while it was a city of the third class, was provided with a system for the levy and collection of its taxes under the act Feb. 27, 1860. When it became a city of the second class it was provided with a different system by the act of March 22, 1877. The two systems cannot stand together; and, as a member of the second class of cities, it must accept the system prescribed by the latter act.

*Repeal of local by general law—Classification acts.*

While a previous local statute is not repealed by a subsequent general statute inconsistent with it unless words of repeal are employed, yet such rule is not applicable to classification acts: (1) Because the legislative intent to repeal local laws is fully expressed in those acts. (2) Because those acts are of a character to exclude the operation of the rule, being intended to revise the laws relating to municipal affairs so as to reduce all former types and forms of municipal government to three, one for each class. (3) Because the very nature of class legislation renders the

rule inapplicable. Whenever any law regulating the municipal affairs of cities of the given class shall be found to conflict with a previous local statute applicable to any member of the class relating to the same subject, the latter must give way by reason of the nature and purpose of class legislation.

*Local tax law—Constitution—Act 9, sec. 1.*

The provisions of the act of March 22, 1877, prescribing a system of taxation for cities of the second class, is not a local tax law in violation of art. 9, § 1, of the constitution, declaring that all taxes shall be levied under general laws,—the power to levy and collect taxes being one of the corporate powers which the classification acts have undertaken to regulate.

Whether all the provisions of the act of March 22, 1877, relating to liens, laws of evidence or the effect of sheriff's sales, are constitutional is not decided; but only that the city of Allegheny having passed out of the third into the second class of cities must levy and collect its taxes under the system provided for that class.

Argued Nov. 5, 1892. Appeal, No. 210, Oct. T., 1892, by John McKirdy et al., relators, from decree of C. P. No. 3, Allegheny Co., Aug. T., 1892, No. 106, refusing peremptory writ of mandamus against David Macferron, treasurer of the city of Allegheny. Before PAXSON, C. J., WILLIAMS, GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Petition for writ of mandamus setting forth that relators were owners in fee of certain real estate subject to taxation in the city of Allegheny, that David Macferron was city treasurer and, under the act Feb. 27, 1860, P. L. 85, collector of taxes, that relators had tendered him taxes in said real estate, less five per cent discount, on May 18, 1892, but he had refused to receive them.

An alternative writ was thereupon issued to which Macferron returned that by the census of 1890 and the certificate of the governor entered on the minutes of councils of said city and duly recorded in the recorder's office, the city was now in the second class of cities and subject to the laws governing such class and was duly organized as such in 1891, and that the taxes are levied and collectable under the act of March 22, 1877, and its supplements, by which taxes are payable one half in March and one half in September; that he is city treasurer but not collector of taxes. The offer to pay taxes by relators was admitted.

The court, upon demurrer to this return and motion for a peremptory writ, overruled the demurrer, denied the motion and refused the writ, in an opinion by McCLUNG, J.

*Error assigned* was, inter alia, the decree, quoting it.

*Johns McCleave*, with him *J. M. Swearingen*, for appellants.— The question is not whether Allegheny is a city of the second class, but whether the act of Feb. 27, 1860, is still in force in that city. The act is a special local law presumably passed to meet the wants of that city: Malloy v. Reinhard, 115 Pa. 25; and is not repealed by a general act: Bell v. Allegheny Co., 30 W. N. 193; s. c., 1 Adv. R. 763. The repealing clause of the act of 1877 operates only on general laws: Morrison v. Fayette Co., 127 Pa. 110; Rymer v. Luzerne Co., 142 Pa. 108; Lackawanna Co. v. Stevens, 105 Pa. 465; Harrisburg v. Sheck, 104 Pa. 53; Bell v. Allegheny Co., supra.

But when the act of 1877 was passed, the city of Allegheny was not of the second class, nor even of the third class. It was under its special charter of 1870, as well as act of 1860: Henry St., 123 Pa. 356. A mere change in the form of government and in classification will not abrogate the existing laws. The city remains the same: Wyman v. Com., 137 Pa. 508; Erie Academy v. Erie, 31 Pa. 515; Bell v. Allegheny, Co., supra.

Kilgore v. Magee, 85 Pa. 411, simply affirms the power of legislation to classify cities, enunciated in Wheeler v. Phila., 77 Pa. 338; they are no authority for the proposition that the act of 1877 regulating payment of taxes applies to the city of Allegheny.

There is no power in the legislature to classify cities for the purpose of collecting taxes, and, therefore, the act of 1877 is unconstitutional so far as it attempts this: Art. 9, § 1, Const. Unless a necessity for classification appears it is unconstitutional: Ayars' Ap., 122 Pa. 266; Ruan St., 132 Pa. 257; Phila. v. Haddington Church, 115 Pa. 291; Pittsburgh's Petition, 138 Pa. 435.

*D. T. Watson*, for appellee.—When a city passes from one class to another it becomes subject to all laws governing that class: Com. v. Wyman, 137 Pa. 523. This includes tax laws: Kilgore v. Magee, supra; Board of Education v. Phelps, 85

Pa. 401.  The intent of this act distinguishes it from that of 1876, discussed in Bell v. Allegheny County, supra.  If there is an intent to repeal, the prior local law will be repealed. . It was so held as to crimes: Nusser v. Com., 25 Pa. 126.  As to local law: Johnston's Estate, 33 Pa. 511.  As to building asso-ciations: Rhodes v. Hoernerstown Building Association, 82 Pa. 180.  As to mechanics' liens: Best v. Baumgardner, 122 Pa. 17.  As to desertion: Keller v. Com., 71 Pa. 413.  This court has specifically decided the question here involved in the case of Kilgore v. Magee, 85 Pa. 411; Board of Education v. Phelps, 85 Pa. 401; McCarthy v. Com., 110 Pa. 246; Brad-ley v. Pittsburgh, 130 Pa. 477; Ayars' Ap., 122 Pa. 278; Read-ing v. Savage, 124 Pa. 329; Harrisburg v. McCormick, 129 Pa, 213; Black v. Chester, 132 Pa. 568; Scranton v. Whyte, 30 W. N. 74.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1893:

This appeal presents a single question.  It is one of consider-able practical importance and has not yet been definitely settled by decision.  The act of 1874 divided the cities of the com-monwealth into three classes upon the basis of population.  It also provided that when any city of a lower class had reached the limit of population for the class above it, this fact when properly ascertained should be certified by the governor to the councils of the city, and upon the recording of such certificate upon the records of councils, the city should pass, eo instanti, into the class in which its population entitled it to be.  We are now to inquire how much of the legislation peculiar to the city, or to the class of cities out of which it goes, it can take with it into the new class of which it becomes a member, and how much it must leave behind?  In answering this question we should consider, first, the objects of classification as declared by the legislature; and, next, the several provisions of the act of 1874, and supplementary legislation, by which these declared objects are carried into practical operation.

The first section of the act of 1874 sets out very clearly the object of classification.  It is to regulate the exercise of certain corporate powers, and the number, character, powers and du-ties of certain corporate officers, in the cities composing the several classes.  The same section declares that "the corporate

powers, and the number, character, powers and duties of the officers of cities of the several classes now in existence by virtue of the laws of this commonwealth shall be and remain as now provided by law. except where otherwise provided by this act." Here is a very plain declaration of legislative intent to recast the governments of cities in such particulars as might be necessary to their classification, and to secure uniformity in the general outline of the municipal government, provided for all the members of each class. Here is also an equally plain declaration of the legislative purpose to leave each city in the full enjoyment of all its powers, rights and privileges not superseded by the uniform scheme or plan of municipal government provided for the class into which such city may come. As was held in Commonwealth ex rel. v. Wyman, 137 Pa. 508, the transition of a city from one class to another works such change in its government as the law makes necessary to adjust it to the class into which it goes. In other respects it works no change, but the city brings its municipal belongings with it into the new class. It would seem that we are thus provided with an answer to our question by the act of 1874. So far as the legislation affecting a city of the third class conflicts with the uniform general plan of municipal government provided for cities of the second class, so far it must, upon its transition into that class, leave its former system behind it; else it could not adjust itself to the class into which it has come, and the whole scheme of classification would fall. So far as its former legislation is not in conflict with the legislative plan of government for the new class, so far it remains in full force.

Let us now apply this test to the case before us. The city of Allegheny was provided, while it was a city of the third class, with a system for the levy and collection of its taxes. The law has provided a very different system for cities of the second class. The two cannot stand together. It is clear, therefore, that in order to adjust itself to the class into which it has come, this city must leave its old system behind it, and take on that which the law has prescribed for it as a member of the second class. This is rendered still more apparent when we remember that the power to levy and collect taxes is one of the " corporate powers " which the classification acts have undertaken to regulate; and that the officers through whom

such levy and collection are made, are "corporate officers," whose powers and duties are defined and adjusted by the same acts. If no provision for the levy and collection of taxes in cities of the second class had been made, the system previously in existence in such cities would have remained undisturbed under the express declaration of the first section of the act of 1874; but to the extent to which the law has regulated the exercise of the taxing power, or modified the powers and duties of the officers through whom it is exercised, to that extent the old system is superseded by the new, and upon the transition of a city from the lower to the higher class it exchanges its outgrown municipal dress for that which the law has provided for every member of the class into which it comes. If this was not so, the very objects of classification would be defeated and, instead of uniformity among the members of each class, we should have the same diversity in the organization and administration of the government of cities as existed when the act of 1874 was adopted. Under the letter of the constitution cities constituted a single class, and as local legislation regulating municipal affairs was forbidden, classification became necessary to avoid intolerable inconvenience and hardship. Wheeler v. The City, 77 Pa. 338. Instead of one form of municipal government for all the cities of the commonwealth we now have three forms, one for each class, and to the forms so provided every member of each class must conform. A reason for this is found in the fact that since 1874 local legislation regulating the affairs of a city is forbidden by the constitution, so that legislation for that purpose can be had only for a class, and must be applicable to every member of the class.

The learned counsel for the appellant contends that the rule that a previous local statute is not repealed by a subsequent general statute inconsistent with it, unless words of repeal are employed for that purpose, should be applied in this case, and argues that the previously existing tax laws of Allegheny not having been repealed in express terms have survived the transition of the city into another class and are still in full force. We do not question the correctness of the rule invoked, but we cannot agree that it is applicable in this case for several reasons. First, The rule is one of construction adopted in order to settle judicially the legislative intent in the absence of words declar-

ing such intent; while in the classification acts the legislative in-
tent, is fully expressed. Second, The nature and purpose of
the classification acts, and the laws enacted for the separate
classes, are of a character to exclude the operation of the rule.
They are intended to revise the laws relating to municipal
affairs so as to reduce all former types and forms of municipal
government, almost as numerous as the cities in the state, to
three, one for each class; and to substitute the class form in
lieu of the previously existing form in every city of the class.
The courts will give effect to the legislative purpose to revise
and consolidate, or to substitute. Johnston's Estate, 33 Pa.
511; Best v. Baumgardner, 122 Pa. 17; Kilgore v. Magee et
al., 85 Pa. 411. Third, The very nature of class legislation
makes the rule inapplicable. If a law relating to cities of any
given class could be held to exclude, or to be inoperative in
one or more members of the class, it must, under the constitu-
tion, be inoperative in all, and fall altogether. There can be
no law for a class that does not embrace the whole class.
There can be no law regulating the affairs of one city in a class
that does not apply to every city in the class. Whenever,
therefore, any law regulating the municipal affairs of cities of a
given class shall be found to conflict with a previous local
statute applicable to any member of the class relating to the
same subject, the latter must give way by reason of the nature
and purposes of class legislation. In this manner existing
diversities will gradually disappear, and uniformity throughout
the class will be finally secured.

It is also contended that an act relating to the collection of
taxes in a given class of cities is local, and violates art. 9, § 1
of the constitution, which declares that all taxes shall be levied
and collected under general laws, and we are asked to reverse
the court below for this reason. We regard this question as
already settled against the appellant. We have repeatedly
held that the power to classify being conceded, the conclusion
that an act passed for a class was not a local law within the
prohibition of the constitution was irresistible. It may not be
a general law in the same sense that one applicable to the com-
monwealth at large is general; but it is general, in another and
strictly legal sense, since it embraces all the members of a class
which the legislature has created, without any violation of the

fundamental law; and which is, therefore, a proper subject for legislation. Whether all the provisions of the acts of 1874 and 1877 are constitutional, is not our question. If any one of them is open to objection because of its attempt to change the law of liens, the rules of evidence, or the effect of a sheriff's sale, it will be quite time to consider such a question when we have before us a case that fairly raises it. What we now hold is that Allegheny having passed out of the third class, and taken its place as a member of the second class, must levy and collect its taxes under the system provided for cities of the second class; because, its old system has been superseded, in and by virtue of its transition, by the system provided for the class into which it has now come.

Decree affirmed.

(See, also, the preceding cases.)