# Philadelphia *v.* Philadelphia Traction Company, Appellant.

| 206 | 35 |
| e208 | ³158 |
| 206 | 35 |
| 31 SC | 532 |
| 206 | 35 |
| f219 | 78 |

*Taxation—Street railways—Traction motor companies—Real estate—
Act of April 21, 1858, P. L. 385.*

The legislature has the power to authorize a municipality to impose a tax upon the real property of railway corporations situated in a city.

A traction motor company which leases and operates street railways in the city of Philadelphia is subject to the Act of April 21, 1858, P. L. 385, which provides that " the offices, depots, car houses, and other real property of railway corporations situate in said city, the superstructure of the road and water stations alone excepted, are and hereafter shall be subject to taxation by ordinance for city purposes."

*Railroads—Railways—Words and phrases.*

The words " railroad " and " railway " used in statutes of Pennsylvania will be considered as synonymous, and either will be held to apply both to steam railroads and street railways, unless there appears from the title of the act, its purpose or its context something to indicate that a particular kind of a road is intended.

*Traction motor companies—Franchise—Street railways.*

When a traction motor company operates a street railway, and leases the property and franchises of various railway companies, and operates them on its own account, it is exercising the franchise of a street railway company ; and it enjoys the privileges granted to, and becomes subject to the liabilities imposed by law upon such company.

Argued Jan. 23, 1903. Appeal, No. 221, Jan. T., 1902, by defendant, from order of C. P. No. 1, Phila. Co., Dec. T., 1896, No. 708, making absolute a rule for judgment for want of a sufficient affidavit of defense in case of Philadelphia v. Philadelphia Traction Company. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Scire facias on tax claim.

From the record it appeared that the tax for which suit was brought was levied upon defendants' car barn for the year 1896, The defendants filed an affidavit of defense, the material portion of which is as follows :

The defendant is a traction motor company, duly incorporated under the act of assembly of the commonwealth of Pennsylvania, entitled "An act to provide for the incorporation and

regulation of motor power companies for operating passenger railways by cables, electrical, or other means," approved March 22, 1887, for the purpose of " constructing and operating motors and cables for supplying motive power to passenger railways, and the necessary apparatus for applying the same."

Prior to the year 1896 the defendant had, in pursuance of powers expressly granted to it under said act, entered into certain contracts and leases with passenger railways in the city of Philadelphia; said railway companies were engaged in the business of carrying persons from place to place along the various streets of the said city, and under and by virtue of said contracts and leases it became, and was, the duty of the defendant to operate the cars over the lines of said various railways and to provide facilities and buildings necessary for such purpose. In order to carry out these objects and the duty which it owed to its said lessors and the public in the premises, it became necessary for the defendant company to acquire real estate and to erect thereon buildings for the housing, storage, and handling of cars when not in use and over night.

It accordingly purchased with a portion of the money representing its capital stock premises situate on the east side of Sixteenth street, from Jackson to Wolf, in the twenty-sixth ward of the city of Philadelphia, described in the lien, and constructed thereon the building mentioned in the scire facias, which is a car barn for the housing and care of its cars as aforesaid. The building is used for the storage of cars over night, which cars otherwise would have to stand upon the public streets. A small portion of it is used as the office and headquarters of the superintendent, who is actually in charge of the business at said car barn, looking after the said cars and dispatching them upon their various trips.

Said property was purchased and used for the purposes aforesaid, and was indispensably necessary to the operation of said defendant company's public franchises, and was used for no other purposes whatsoever. As said property represented part of defendant's capital stock, it was liable to pay, and has paid, to the commonwealth of Pennsylvania, a tax for said year upon the said property as part of such capital.

Said property was, and is, part of the public works of defendant, and used as such only, was essential to the carrying out

of the public purpose for which it was incorporated as aforesaid, and defendant received no profit or income therefrom by way of rental or otherwise. Defendant is advised, and therefore avers, that such being the case, the local authorities of the county are without power to impose the tax aforesaid, not only because it would result in double taxation upon the same property, contrary to the intent of the acts providing for the levying and collection of taxes, but because, if such property was subject to seizure and sale piecemeal, the defendant would be crippled in the exercise of the public functions required of it, and that such power has not been conferred upon the local authorities.

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of court.

*Ellis Ames Ballard*, with him *Rufus E. Shapley*, for appellants.—Such property of corporations charged with the exercise of public or semipublic franchises as is appurtenant and indispensable to the performance of those franchises, is exempt from local taxation : Schuylkill Bridge Company v. Frailey, 13 S. & R. 422 ; Lehigh Coal & Nav. Co. v. Northampton County, 8 W. & S. 334 ; Northampton County v. Lehigh Coal & Nav. Co., 75 Pa. 461 ; Allegheny County v. Diamond Market Company, 123 Pa. 164 ; Gyger v. Phila. City Pass. Railway Company, 136 Pa. 96.

*Mayne R. Longstreth*, with him *John L. Kinsey*, city solicitor and *James Alcorn*, assistant city solicitor, for appellee.—A traction motor company has the power to manufacture and sell motors and cables and other street car appliances, but this would only make it a manufacturing corporation, and as such it would still be subject to local taxation on its real estate: Hawes Mfg. Co.'s Appeal, 24 W. N. C. 302.

The real and personal property of a corporation may be taxed although it pays a tax on the stock which purchased it. The power of the legislature is as ample to tax twice as once, and it is done daily as all experience shows : Saving Fund v. Yard, 9 Pa. 359 ; West Chester Gas Co. v. Chester Co., 30 Pa. 232;

Carbon Iron Co. v. Carbon Co., 39 Pa. 251; Lackawanna Iron & Coal Co. v. Luzerne Co., 42 Pa. 425; Pittsburg, etc., R. R. Co. v. Com., 66 Pa. 73; Ebervale Coal Co. v. Com., 91 Pa. 47; Beechwood Ave., 194 Pa. 86.

That street railways are included in the word "railroad" as used in statutes, has been decided in the following cases, among others: Hestonville, etc., R. R. Co. v. City, 89 Pa. 210; Millvale v. Evergreen Pass. Ry. Co., 131 Pa. 1; Penna. R. R. Co. v. Pittsburg, 104 Pa. 522; Rafferty v. Traction Co., 147 Pa. 579; Old Colony Trust Co. v. Transit Co., 192 Pa. 596; Penna. R. R. Co. v. Electric Ry. Co., 152 Pa. 116; Cheetham v. McCormick, 178 Pa. 186.

Opinion by Mr. Justice Fell, May 11, 1903:

The city's claim for taxes is based on the Act of April 21, 1858, P. L. 385, which provides that: "The offices, depots, car houses, and other real property of railway corporations situate in said city, the superstructure of the road and water stations alone excepted, are and hereafter shall be subject to taxation by ordinance for city purposes." The power of the legislature to impose this tax and to delegate its authority to do so to the municipality has been settled by our decisions: Penna. R. R. Co. v. Pittsburg, 104 Pa. 522; Jermyn v. City of Scranton, 186 Pa. 595. Nor is this case within the class of cases in which it has been held that in the absence of an express declaration it will be presumed that the legislature did not intend to subject to taxation as real estate the property of a corporation that is essential to the exercise of its franchises and has once been taxed as a part of its capital. The power to tax and the intention to tax are clear, and the single question to be considered is whether a traction motor company which leases and operates street railways is within the provision of the act of 1858.

The act subjects to taxation for city purposes "the real property of railway corporations situate in the city, the superstructure and water stations alone excepted." It is argued that the exception of the "superstructure and water stations" indicates that steam railroads only were meant, since they are the only roads owning their right of way or having water stations. That the word "railway" is used is of little or no importance in

construing the act.   The words "railway" and "railroad" have been used indiscriminately by the legislature, and have no strict technical meaning in our statutes.   A number of passenger railways were incorporated about the time of the passage of the act of 1858, and some of them in the special acts of incorporation are designated as "railway companies" and some as "railroad companies."   The rule established by our decisions is that these words used in the statutes will be considered as synonymous, and either will be held to apply to both kinds of roads, unless there appears from the title of the act, its purpose or its context something to indicate that a particular kind of a road is intended: Hestonville, etc., Railroad Co. v. Philadelphia, 89 Pa. 210; Gyger v. Phila. City Pass. Ry. Co., 136 Pa. 96; Cheetham v. McCormick, 178 Pa. 186; Old Colony Trust Co. v. Transit Co., 192 Pa. 596.   The exemption from taxation of the superstructure and water stations clearly indicates that steam railroads were included, but it does not follow that passenger railway companies were excluded.   The word used applies to both kinds of roads, and we see no ground on which it can be held that either is exempted from the operation of the act.   An act similar to the one under consideration was construed in Penna. R. R. Co. v. Pittsburg, 104 Pa. 522. This act provides that "all real estate situated in said city owned or possessed by any railroad company shall be and is hereby made subject to taxation for city purposes, the same as other real estate in the city."   It was held that the act applied to both steam railroads and passenger railways, and that under it the land, buildings and improvements thereon of the companies were liable to taxation for city purposes, although they were essential to the exercise of corporate franchises in the operation of the roads.   There is no real distinction between these acts.

It remains to determine whether for the purpose of this inquiry there is a distinction between passenger railway companies and traction motor companies.   Companies of the latter class are incorporated under the Act of March 22, 1887, P. L. 8, and the grant of power is to enter upon streets upon which passenger railways have been constructed, with the consent of the railway company, and to construct, maintain and operate thereon motors, cables, electrical and other appliances for the

traction of the cars of the passenger railways. They are given power to " lease the property and franchises of street passenger railways which they may desire to operate, and to operate said railways." By the Acts of May 15, 1895, P. L. 63 and P. L. 64, they are authorized to buy and own the franchises of street passenger railways, to lay out new lines, and to operate their different lines as a general system. A traction company whose business is confined to the construction of appliances for street railway companies, or to the operation of motors, cables, electrical or other appliances for the traction of the cars of such companies, has but little resemblance to a street railway company and more to a construction or power company. But when, as in this case, it operates a railway and leases the property and franchises of various railway companies and operates them on its own account, it is exercising the franchises of a street railway company, as it is authorized to do, and it enjoys the privileges granted to and becomes subject to the liabilities imposed by law upon such companies. This view is in harmony with all of our decisions touching the subject: Rafferty v. Central Traction Co., 147 Pa. 579; Reeves v. Phila. Traction Co., 152 Pa. 153; Old Colony Trust Co. v. Allentown, etc., Rapid Transit Co., 192 Pa. 596.

The judgment is affirmed.