## Evans, Appellant, *v.* City of Lancaster.

*Municipalities—Assessments—Board of appeal—Lancaster—Special charter.*

A Board of Appeal, authorized by section 29, of the Act of April 5, 1867, P. L. 783, amending the act incorporating the City of Lancaster, to hear persons who may consider themselves improperly assessed, and to exonerate or alter the assessments as they deem proper, does not have power of its own motion to increase the assessment made and returned by the proper ward assessors, but can only act in cases of appeal by property owners.

Argued March 16, 1923. Appeal, No. 16, Oct. T., 1923, by plaintiff, from decree of C. P. Lancaster County, dismissing appeal from assessment of real estate by Finance Committee of Councils of the City of Lancaster, Trust Book, No. 26, page 48, in the case of John J. Evans v. City of Lancaster. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Appeal from assessment of real estate by Finance Committee of the Councils of the City of Lancaster. Before LANDIS, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the appeal. Plaintiff appealed.

*Error assigned* was in dismissing the appeal.

*Charles G. Baker,* for appellant.

*Harry L. Raub, Jr.,* City Solicitor, for appellee.

OPINION BY LINN, J., April 16, 1923:

The question is whether the finance committee of councils of the City of Lancaster, sitting as a board of appeal, of its own motion, may increase a city tax assessment duly made and returned by the proper assessor. The learned court below held the board had such power and dismissed the property owner's appeal to the common pleas. He now assigns that action for error. "On March 4, 1922, the mayor of the city issued his precept to the assessor of the second ward to assess the several properties located in said ward, for city purposes, and in pursuance thereof, the said assessor assessed the property of the appellant at the sum of $7,500, and made return thereof as required by law. On April 25, 1922, the finance committee of the select and common councils of said city, sitting as a board of appeal, of its own motion

increased the said valuation to $8,500, and changed to that sum the valuation on the assessment book for city purposes." The court heard the case on the petition for appeal and the answer of the board (admitting the facts in the petition) and a stipulation that the charter of the City of Lancaster, amendments thereto, and the city ordinance of January 22, 1868, should also be considered. The record contains no evidence that the assessment is too high, otherwise disproportionate, or enabling the court to determine what it should be pursuant to the Act of April 19, 1889, P. L. 37 (Rockhill I. & C. Co. v. Fulton County, 204 Pa. 44, 48; D., L. & W. R. R. Co.'s Assessment, 224 Pa. 240, 244), assuming though not deciding that the appeal lay under that statute.

The City of Lancaster has not accepted the legislation of cities of the third class. It was incorporated by a special act amended by the Act of April 5, 1867, P. L. 783, the 29th section of which provides "......that hereafter the qualified voters of each ward shall elect one person as assessor for state, county and city purposes,......the several assessors......shall do and perform, within their respective wards, all the duties that, by the usages and laws of this Commonwealth, are now enjoined upon the assessors......and after they shall have taken the names of the taxable persons, and an estimate of the real and personal estates, of the inhabitants of the said city, and the real estate of persons nonresidents, they shall meet together, as a board, to equalize and fix a uniform standard and just valuation on the same;...... and......make out a duplicate of their assessments, and present the same to city councils......and the said councils shall appoint a board of appeal, to hear all persons who may consider themselves improperly assessed; and the said board of appeal shall have power to exonerate, or alter the assessments of, such persons as they may deem proper; ......" Section 30 provides that "the assessors in the several wards shall perform the duty of city assessors, [see Kuhlman v. Smeltz, 171 Pa.

440] in conformity with the provisions of this act and the ordinances of said city." Section 4 of the ordinance of January 22, 1868, provides, "the committee of finance and accounts is hereby constituted the board of appeal, as provided for in the 29th section of the act of assembly, approved April 5, 1867; [supra] and it shall be the duty of the said board of appeal to sit at such times ......as they shall designate by advertisement, and as shall be necessary, to hear all persons who may consider themselves improperly assessed; and the said board of appeal shall have power to exonerate or alter the assessment of such persons as they deem proper."

The learned court below held that the statute authorized the creation of a board of revision and appeal, and not merely a board of appeal, and that the board created had power at will to alter the assessments made and returned by the assessors, even though no one appealed against such assessment. Appellant contends that the power of the board is limited to assessments of persons who appeal to the board as "improperly assessed" by the assessors, and that as no appeal was taken to the board complaining that this property was improperly assessed, the board lacked jurisdiction to increase the assessment.

In the opinion filed below the learned president judge adverts to the fact that the general statutes "relating to the equalization of taxation are more explicit than the Act of 1867," but apparently concludes that the necessities of the city demand the same power of assessment equalization generally possessed by boards of revision and appeal, for he suggests that if councils lack the power to change and correct assessments, "a situation might arise in which, by reason of low assessments placed on properties by assessors, it would be impossible for the city to raise sufficient money to cover" lawful objects.

Lancaster is a large and flourishing city, whose municipal development may be delayed by the limitations of its special charter, but relief is not always with the

court, though it is apparently in the power of the city to remove them by accepting the third-class city legislation conferring more comprehensive municipal authority: Harrisburg v. Harrisburg Gas Co., 31 Pa. Superior Ct. 530; 219 Pa. 76.

The legislative direction that "said councils shall appoint a board of appeal, to hear all persons who may consider themselves improperly assessed;......[with] ......power to exonerate, or alter the assessments of, such persons as they may deem proper"; clearly limits the power of the board (1) to hearing persons who invoke that jurisdiction, and (2) to exonerating or altering only such persons' assessments; the board must "hear all persons" claiming to be improperly assessed, but it need not exonerate or alter all such assessments, only such appealed from "as they may deem proper." The title, board of appeal, indicates the same limited power, and it is significant that the word, revision, is omitted, though in common use when the legislature desires to confer the more extensive power in creating boards of revision and appeal (see section 13 of the Act of July 27, 1842, P. L. 446; Pardee et al. v. Schuylkill County, 276 Pa. 246; section 1 of the Act of March 14, 1865, P. L. 320; section 5 of the Act of May 23, 1895, P. L. 118, and amendments). Had the legislature intended to create a board of revision instead of a board with the limited appellate power given, it could have done so in short and explicit form by merely authorizing the revision, alteration or equalization of assessments (section 4, Act of May 15, 1841, P. L. 394).

The board of appeal had no authority of its own motion to increase the assessment made and returned by the proper assessor.

The order appealed from is reversed and the record remitted for proceedings consistent with this opinion.

KELLER, J., dissents.